**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GUI LYU,<br>Petitioner,<br>v.<br>JAMES JANECHA, et al.,<br>Respondents. | Case No. 5:26-cv-05051-MBK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Gui Lyu, a Chinese citizen, is currently in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Ms. Lyu initially entered the United States on B-2 visitor visa in 2023 and subsequently filed an application for asylum. Over the past three years, Ms. Lyu was granted employment authorization, held steady employment, established community ties in the United States, and has no criminal history.

On July 27, 2026, Immigration and Customs Enforcement ("ICE") officers arrested Ms. Lyu at the Hollywood Burbank Airport as she prepared to board a domestic flight. She was later transferred to the Adelanto Detention Facility, where she remains today. In this habeas action, Ms. Lyu

argues that her detention without a pre-deprivation hearing violates due process. In their Answer, Respondents argue that Ms. Lyu's due process claim should be denied because she was provided a post-deprivation bond hearing, at which an Immigration Judge ("IJ") found she is a flight risk and denied her release.

For the reasons that follow, the Court concludes that Ms. Lyu's sudden detention—without any pre-deprivation process or a material change in circumstances warranting her detention—violates due process and that her post-deprivation bond hearing did not cure the constitutional violation she suffered. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Ms. Lyu's immediate release.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Gui Lyu is a native and citizen of the People's Republic of China. Dkt. 1 at 6. She was born on December 21, 1983. *Id*. She fled to the United States to seek protection from persecution in her native country. *Id*. On March 7, 2023, Petitioner entered the United States at John F. Kennedy International Airport with a B-2 visitor visa authorizing her stay through September 6, 2023. *Id.* She was inspected upon entering. *Id.* She filed an application for asylum, which was received by the Government on August 21, 2023, and remains pending. *Id.*

United States Citizenship and Immigration Services ("USCIS") subsequently granted Petitioner employment authorization while her asylum claim remains pending. *Id.* During her time in the United States, Petitioner has worked lawfully at a pet shop and maintained a residence in San Gabriel, California. *Id*. She has no criminal history. *Id.*

On July 27, 2026, Petitioner attempted to board a flight at Hollywood Burbank Airport to Sacramento, California. *Id.* at 7. Before she could board, Immigration and Customs Enforcement ("ICE") officers arrested her without notice, a hearing, or a warrant. *Id.* The officers transported her to an ICE office in downtown Los Angeles and then transferred her to the Adelanto Detention Facility. *Id.* Petitioner's confinement has taken a toll on her. She suffers from depression and sleeps poorly due to being cut off from the life she has built in the United States. *Id*. at 8.

On September 1, 2026, five weeks into her detention, Petitioner appeared for a bond hearing in Immigration Court pursuant to 8 U.S.C. § 1226(a). *Id.* at 8. The IJ found Petitioner a flight risk for which "no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." Dkt. 1-4 at 2. Petitioner reserved appeal, for which her opening brief is due on October 1, 2026. *Id.* at 3.

Petitioner filed the instant Petition that same day, on September 1, 2026. Dkt. 1. Petitioner argues that: (1) her detention without pre-deprivation notice and a hearing violate procedural due process; and (2) her ongoing detention violates substantive due process because it is not reasonably related to a legitimate government purpose. *Id*. at 12-13. On September 9, 2026, Respondents filed their Answer, in which they argue that the bond hearing provided "in compliance with the Court's order" on September 1, 2026, foreclosed Petitioner's due process claims. Dkt. 8 at 2. Respondents also argued that Petitioner's claims "appear[ed] to challenge the merits of the Government's decision to detain Petitioner and the immigration judge's decision to deny her bond," and this Court lacked jurisdiction to consider such claims. *Id.* at 5.

On September 9, 2026, Petitioner filed her reply. Dkt. 9. Petitioner first noted that Respondents erred in suggesting that the bond hearing was the result of a court order. Dkt. 9 at 3. She also re-iterated her arguments that a post-deprivation bond hearing did not foreclose her due process claims because she seek immediate release as remedy for constitutionally inadequate pre-deprivation process. *Id.* at 4. Finally, Petitioner disclaimed that she was seeking review of the IJ's bond denial, but nonetheless argued that the IJ's bond determination was not individualized and that the IJ employed a template order used in numerous other cases. *Id.* at 10-11 (collecting cases).[1]

## II. DISCUSSION

Petitioner Gui Lyu claims that she is entitled to immediate release from custody because, *inter alia*, she was deprived of her liberty without adequate pre-deprivation due process. Dkt. 1 at 12. Respondents argue that Petitioner's bond hearing "moots this action" and that, in any event, it "forecloses his [sic] due process claims because it significantly reduces any risk of erroneous deprivation under the *Mathews v. Eldridge* three-part test." Dkt. 8 at 2.

As an initial matter, the Court rejects Respondents' argument that Petitioner's bond hearing "moots" her claims. Dkt. 8 at 2. A claim is moot only when "there is no longer a possibility" that a litigant "can obtain relief for his claim." *See Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). "[W]hen, by virtue of an intervening event, a court [ ] cannot 'grant any effectual relief whatever' in favor of the [petitioner]," the proceeding should be dismissed as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation

[1] Petitioner requests that the Court order the digital audio recording of the bond hearing and body-worn camera footage of her arrest. Dkt. 9 at 12. However, Petitioner expressly states that she does not seek review of the IJ's determination, (*id.* at 13), and does not explain how the body camera footage would be relevant to her due process claims. Accordingly, Petitioner's request is denied.

omitted). Here, Petitioner's bond hearing does not preclude the Court from granting any effectual relief. Indeed, the Court can still grant the only relief that Petitioner seeks in the Petition—her outright release. Respondents cited authority is readily distinguishable: the decisions either involve claims to preliminary relief or cases in which the petitioner solely sought a bond hearing. *See* Dkt. 8 at 2 n.1 (collecting cases). Respondents provide no authority that a bond hearing moots a habeas petition seeking the petitioner's release.

The Court therefore turns to the merits of Petitioner's due process claim. This Court has previously found that, under the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) framework, noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See, e.g.*, *Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026).

Courts have extended these principles to cases in which a noncitizen had not been released from immigration custody previously, but where the record indicates that the Government "deliberate[ly] acquiesce[d]" in the noncitizen's remaining at liberty in the United States. *See Martinez v. Acting Warden of the Adelanto Detention Center*, No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application "possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process"); *Kharitonova v. Albarran*, No. 3:26-cv-

01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but was never detained, had a protected liberty interest in remaining free). This case is comparable. Petitioner became subject to detention under 8 U.S.C. § 1226(a) after her B-2 visa expired, but the Government elected not to detain her and instead granted her employment authorization while her asylum case remains pending. For the past three years, Petitioner has proceeded with her asylum claims, remained gainfully employed, deepened her ties in the community, and has had no arrests or convictions. Throughout this time period, the Government knew exactly where Petitioner was but permitted her to remain at liberty. Under these circumstances, the Court finds that Petitioner's detention without a pre-deprivation hearing or a material change in circumstances violates due process.

Respondents do not appear to dispute that, under *Mathews*, due process ordinarily requires pre-deprivation notice and a hearing prior to detaining someone in Petitioner's circumstances.[2] Instead, Respondents only argue that where, as here, a noncitizen has obtained a post-deprivation bond hearing, their due process claim is "foreclose[d]." Dkt. 8 at 2 (arguing that Petitioner's bond hearing "significantly reduces any risk of erroneous deprivation under the *Mathews v. Eldridge* three-part test"). Respondents claim that "the Ninth Circuit has been clear that even where a predeprivation hearing is required under the *Mathews v. Eldridge* framework on account of 'a legitimate and reasonably strong private liberty interest,' those private interests are

---

[2] Respondents' principal cited authority recognizes that due process requires such pre-deprivation process, even though it ultimately denied habeas relief. *See Aguilar v. Semaia*, No. 5:26-CV-00023-MCS-SSC, 2026 WL 166906, at *4 (C.D. Cal. Jan. 16, 2026) ("Therefore, under *Mathews*, Petitioner should have been afforded a pre-detention hearing before his re-detention.").

outweighed by the other two factors because the risk of erroneous deprivation is 'relatively small' due to procedural safeguards in immigration court—such as a bond hearing with counsel present, as was the case here—and the government has a significant interest in enforcing immigration laws," citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-10 (9th Cir. 2022).

But this significantly misconstrues *Rodriguez Diaz*. In *Rodriguez Diaz*, the petitioner had been denied release at a Section 1226(a) bond hearing as a danger based on his "fairly lengthy criminal record" and gang affiliation. 53 F.4th at 1194. He later sought a second bond hearing at which the Government would bear the burden to justify his continued detention by "clear and convincing" evidence. *Id*. at 1195. The Ninth Circuit rejected the claim under *Mathews*, finding that Section 1226(a)'s bond procedures "sufficiently protected Rodriguez Diaz's liberty interest and mitigated the risk of erroneous deprivation." 53 F.4th at 1029. *Rodriguez Diaz* therefore did not address, as Respondents suggest, when a "a predeprivation hearing is required under the *Mathews v. Eldridge* framework." Dkt. 8 at 2. There is no indication that the petitioner there had been previously released from immigration custody or claimed the right to any pre-deprivation process. And *Rodriguez Diaz* made clear that it did not "foreclose all as-applied challenges to § 1226(a)'s procedures" because "due process is a flexible concept that varies with the particular situation." *Id*. at 1213 (cleaned up). The Court therefore rejects Respondents' argument that *Rodriguez Diaz* "forecloses" Petitioner's claim to pre-deprivation process.

Respondents correctly observe that, at least in one case, a district court has rejected a similar due process claim under *Mathews* because the petitioner's post-deprivation bond hearing reduced the risk of an erroneous deprivation. *See* Dkt. 8 at 3-4 (citing *Aguilar v. Semaia*, No. 26-cv-00023-MCS-

SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)).[3] However, most courts to address the issue—including this one—have "concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an "increasing wave of district courts have concluded, a post-hoc bond hearing" is insufficient to remedy the denial of a petitioner's right to pre-deprivation process and ordering the petitioner's release); *Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437, at *6 (C.D. Cal. July 14, 2026) (same).

These decisions reason that a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Khalsa v. Janecka, et al.*, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)). *See also Mendoza v. Adelanto ICE Processing Center Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); *Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al.*, No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the

---

[3] Respondents also cite *Azizyan v. Lyons*, No. 5:25-cv-02960-CAS-SP, Dkt. 12 at 11 (C.D. Cal. Jan. 21, 2026), *adopted*, Dkt. 14 (C.D. Cal. Feb. 6, 2026), but the case did not involve a claim seeking pre-deprivation process.

concomitant damage to his mental health and impact on his family, has already taken place") (cleaned up).

"[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.'" *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at *5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); *Chowdhury v. Lyons*, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Moreover, Petitioner was likely prejudiced by being forced to litigate the legality of her confinement from inside a detention center, some five weeks after she was detained. As numerous courts have recognized, detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing. *See generally Biwot v. Gonzales*, 403

F.3d 1094, 1099 (9th Cir. 2005) (discussing the difficulty of obtaining legal representation for an "incarcerated immigrant"); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019) (discussing the "substantial challenges" faced by a noncitizen attempting to litigate a removal case while detained). Here, Petitioner has explained how she has suffered from sleep deprivation and depression while detained, and that she seeks her release so that she can proceed with her asylum claim with the assistance of her attorney. Dkt. 1-5 at 3. Under these circumstances, the Government's denial of pre-deprivation process certainly "might" have led to an erroneous deprivation of her liberty. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (finding that the petitioner was entitled to habeas relief where he was prejudiced by an IJ's application of the incorrect standard of proof at his bond hearing because it "might" "have affected the outcome of the bond hearing").

Accordingly, the Court finds that Petitioner's detention violated procedural due process.[4]

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS that: (1) Judgment be entered GRANTING the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Gui Lyu's (A# 242-200-974) immediate release, subject to reasonable conditions, and prohibiting her re-detention absent notice and a hearing before a neutral decisionmaker at which the Government must show material changed circumstances warranting her detention; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released from

[4] Because the Court finds that Petitioner is entitled to release on her procedural due process claim, it declines to consider whether she is also entitled to release on substantive due process grounds.

Respondents' custody consistent with this order.

Dated: September 13, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE